The People of the State of Illinois, Appellee, *vs.* Ace Hawthorne, Sr., Appellant.

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

John R. Snively, of Rockford, for appellant.

William J. Scott, Attorney General, of Springfield, and Philip G. Reinhard, State's Attorney, of Rockford, (Fred G. Leach, Assistant Attorney General, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

After a bench trial in the circuit court of Winnebago

County in September of 1968 the defendant, Ace Hawthorne, was found guilty of violating the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1967, ch. 38, par. 22—3), and he was sentenced to imprisonment for not less than two nor more than five years. The three-count indictment under which he was prosecuted charged him with the unlawful possession of marijuana, cocaine, and heroin, respectively.

He was convicted upon the basis of evidence seized in searches of his home and his automobile on February 2, 1968. In the search of his home, which was conducted pursuant to a search warrant, quantities of marijuana, cocaine, and heroin were found. In the search of his automobile, which was not conducted pursuant to a search warrant, marijuana and cocaine were found. On this direct appeal the defendant contends that this evidence should have been suppressed.

The search warrant for the defendant's home was issued pursuant to an affidavit executed on February 2, 1968, by Samuel Ritter, an officer of the Winnebago County sheriff's department. The affidavit stated that on December 15, 1967, an informant had supplied information that on or about November 1, 1967, one Ace Hawthorne was engaged in the regular business of selling marijuana at his home in Rockford, Illinois; that on and before November 1, 1967, the informant had been present at this house on three occasions and had observed marijuana; that on or about November 1, 1967, he had purchased a quantity of marijuana from Ace Hawthorne at his house; and that he had observed Ace Hawthorne transporting marijuana to his home in a 1967 Cadillac bearing Illinois license number LL 8767. Officer Ritter also stated that this informant "on three or more past occasions has furnished information to me concerning criminal violations which information I have personally verified as being reliable and which has resulted in arrests and convictions."

Officer Ritter's affidavit further stated he had been in-

formed by another informant "who has previously furnished information to me concerning criminal violations which information I have personally verified" that Ace Hawthorne was engaged in the regular business of selling marijuana at his residence. The affidavit continued:

"On January 19, 1968, this latter informant appeared in the Winnebago County Sheriff's Department and was determined by me not to be in possession of marihuana or any narcotic drug. This informant then left the Sheriff's Department and returned approximately 20 minutes later and gave me a tin foil packet which was examined by me and found to contain a substance which is apparently marihuana. This informant, at the time of delivering the tin foil packet to me, informed me that after leaving the Sheriff's Department he had purchased it from Ace Hawthorne, Sr. at his house located at 425 Island Avenue, and that the said Ace Hawthorne, Sr. is in possession of other quantities of marihuana at that same house.

"On January 27, 1968, this informant was transported by me in an automobile to the above described residence of Ace Hawthorne, Sr. The informant was searched by me and determined not to be in possession of marihuana or any narcotic drug. He was observed by me entering the residence of Ace Hawthorne, Sr. When he came out a few minutes later this informant delivered to me a brown envelope which was found to contain a substance which is apparently marihuana. He informed me that he had purchased this substance from a woman who delivered it to him in the apartment of Ace Hawthorne, Sr."

It is the defendant's contention that the affidavit is insufficient because "it did not allege specific instances in which the past information had proven reliable and has resulted in arrests and convictions." He also contends that the lapse of time between the receipt of the information and the request for the search warrant was too long. We disagree with both contentions.

The affidavit set forth personal observations of informers who, according to the affiant, had provided reliable information in the past. It informed the judicial officer who issued the warrant "of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer [affiant] concluded that the informant * * * was 'credible' or his information 'reliable.' " (*Aguilar* v. *Texas*, 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509; *Spinelli* v. *United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584; *People* v. *Parker*, 42 Ill.2d 42; *People* v. *Williams*, 36 Ill.2d 505, *cert.* denied 389 U.S. 828, 19 L. Ed. 2d 82, 88 S. Ct. 76.) Moreover, the personal observations of the informers were corroborated by independent investigative efforts by the affiant himself. (*Cf. People* v. *York*, 29 Ill.2d 68.) The affidavit establishes a substantial basis for a judicial officer to believe that narcotics were probably present in the defendant's house. (*Jones* v. *United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.) We are further of the opinion that the delay between the receipt of the information and the execution of the affidavit was not so unreasonable as to vitiate the showing of probable cause. *People* v. *Montgomery*, 27 Ill.2d 404.

The defendant also urges that the search warrant was defective because a properly executed return of the warrant was not timely made. The record shows that the articles seized were listed upon a copy of the search warrant which was returned to the issuing magistrate on February 5, 1968. A properly executed return under oath was not made until April 24, 1968. Since it has been held that failure to comply with statutory requirements concerning the steps to be taken after the warrant has been served does not render the search warrant or the search conducted pursuant thereto invalid, the defendant's contention cannot be sustained. *People* v. *York*, 29 Ill.2d 68, 71; *People* v. *Guston*, 338 Ill. 52.

With reference to the search of the defendant's automobile, the record shows the following: As detective Frank England of the Winnebago County sheriff's department approached the defendant's residence on the evening of February 2, 1968, to serve the search warrant, he saw the defendant pulling away from his home in his 1967 Cadillac. Detective England followed the defendant's automobile for a short distance and then directed him to stop by turning on a red flashing light and siren. England approached the defendant, who had already emerged from his car, and identified himself as a police officer. No arrest was made at that time. England informed the defendant that the sheriff's department had confidential information that he was using his automobile for the transportation of narcotics and asked if the vehicle could be searched. England testified that the defendant said, "I don't know what you're talking about", and unlocked the trunk of his car and opened it for inspection. England searched the trunk but found nothing. He then went to the driver's side of the vehicle. The door was open and he reached his hand under the front seat and recovered a small black box. The box appeared to contain marijuana and either heroin or cocaine. The search warrant was then read to the defendant, and he accompanied the officers to his residence where a search pursuant to the warrant disclosed marijuana, cocaine, and heroin.

The State would justify the search of the automobile on the ground that it was made with the defendant's consent. The defendant contends that any purported consent was involuntary because when he was stopped by the car with the emergency light and siren, he "no doubt assumed that he was under arrest and therefore permitted the officers to search his vehicle." There is also a question as to whether unlocking the trunk of the car amounted to consent for a search of the entire vehicle. We need not decide these questions, because even if the evidence resulting from the search of the vehicle were excluded, the valid search of the defend-

ant's house produced sufficient evidence standing alone to support his conviction. We therefore express no opinion concerning the validity of the search of the defendant's automobile.

The defendant's contention that the indictment was insufficient to charge an offense is disposed of by *People* v. *Mills,* 40 Ill.2d 4; *People* v. *Smith,* 40 Ill.2d 501, 506, and *People* v. *Bussie,* 41 Ill.2d 323, 325, *cert.* denied 24 L. Ed. 2d 70, 90 S. Ct. 56. And the unsoundness of his contention that certain evidence was improperly admitted upon his application for probation is demonstrated by *People* v. *Adkins,* 41 Ill.2d 297.

The judgment of the circuit court of Winnebago County is affirmed.

<div align="right">

*Judgment affirmed.*